**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| ELIZABETH FLANAGAN, et al., | : | |
| | : | |
| Relator/Plaintiffs, | : | Civ. No. 12-2216 (NLH/JS) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| DR. VISHAL BAHAL, D.O., | : | |
| et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES**:

James M. Ficaro
Ross M. Wolfe
The Weiser Law Firm, P.C.
22 Cassat Avenue, First Floor
Berwyn, Pa 19312
     *Counsel for Relator/Plaintiff*

John R. Mininno
The Mininno Law Offices
475 White Horse Pike
Collingswood, NJ 08107
     *Counsel for Relator/Plaintiff*

Charles Scott Graybow
Office off The U.S. Attorney
District Of New Jersey
970 Broad Street, Suite 700
Newark, NJ 07102
     *Counsel for the United States of America*

Nicholas C. Harbist
Melissa Fundora Murphy
Blank Rome, LLP
301 Carnegie Center, 3rd Floor
Princeton, NJ 08540
     *Counsel for Defendants Dr. Vishal Bahal, D.O. and Advanced
     Cardiology of South Jersey*

1

**HILLMAN, District Judge:**

This matter involves a <u>qui tam</u> claim under the False Claims Act ("FCA"), 31 U.S.C. § 3729 <u>et seq.</u>, arising out of allegedly fraudulent claims for Medicare funds.[1]  Before the Court is a motion to dismiss Relator's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) filed by Defendants Dr. Vishal Bahal, D.O. and Advanced Cardiology of South Jersey ("Defendants").  The Court has considered the parties' submissions, and for the reasons that follow, Defendants' motion will be granted in part and denied in part.

    **I.   BACKGROUND**

    **A.  Factual Background**

Plaintiff Elizabeth Flanagan (the "Realtor") brings this <u>qui tam</u> action pursuant to the False Claims Act, 31 U.S.C. § 3729 <u>et seq.</u> and the False Claims Act of the State of New Jersey, N.J.S.A. 2A:32C-1 <u>et seq.</u> for the alleged submission of

---

[1]   The Federal False Claims Act prohibits the submission of false or fraudulent claims for payment to the United States and authorizes <u>qui tam</u> actions, by which private individuals may bring a lawsuit on behalf of the Government in exchange for the right to retain a portion of any resulting damages award. <u>Schindler Elevator Corp. v. U.S. ex rel. Kirk</u>, 563 U.S. 401, 131 S. Ct. 1885, 1889, 179 L. Ed. 2d 825 (2011); <u>U.S. ex rel. Wilkins v. United Health Group, Inc.</u>, 659 F.3d 295, 298 n.1 (3d Cir. 2011).

false or fraudulent Medicare claims.

Relator was employed as a medical assistant and receptionist in Defendants' medical office in Mullica Hill, New Jersey from June 2010 to May 2012. Am. Compl. ¶ 9. As part of her job, Relator administered Defendants' electronic and paper patient charts. Am. Compl. ¶ 11. Relator's allegations are based on her direct knowledge and upon information and belief. Am. Compl. ¶ 13. Specifically, Relator alleges Defendants engaged in eight different illegal schemes: (1) changing the dates of service on claims in order to increase reimbursements; (2) providing medically unnecessary services; (3) failing to have Dr. Bahal review patient test results; (4) failing to provide the required level of supervision for ANSAR tests; (5) failing to have Dr. Bahal review and interpret Holter monitor data; (6) providing kickbacks to patients in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b; (7) conducting medically unnecessary lower extremity studies; and (8) waiving patients' copayment amounts.

The Amended Complaint invokes two subsections of the FCA and its state counterpart. Section 3729(a)(1)(A) applies to those who "knowingly presented, or caused to be presented a false or fraudulent claim for payment or approval." A prima

3

facie pleading requires: "(1) the defendant presented or caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent.  U.S. ex rel. Wilkins v. United Health Grp., Inc., 659 F.3d 295, 305 (3d Cir. 2011) (citation omitted).  Section 3729(a)(1)(B) applies to those who "made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim." For this section, a Relator must plead that the defendant: "(1) made, used, or caused to be made or used, a false record or statement; (2) the defendant knew the statement to be false; and (3) the statement was material to a false or fraudulent claim. U.S. ex rel. Zwirn v. ADT Sec. Servs., Inc., No. 10-2639, 2014 WL 2932846, at *5 (D.N.J. June 30, 2014).

Relator filed this complaint under seal on April 11, 2012. The seal was extended until February 13, 2015, when the Government entered its Notice of Election to Decline to Intervene.  Relator filed her Amended Complaint on April 27, 2015.

## II.  JURISDICTION

This Court has jurisdiction over Relator's federal claims under 28 U.S.C. § 1331, and may exercise supplemental

4

jurisdiction over Relator's related state law claim under 28 U.S.C. § 1367.

### III. STANDARDS OF LAW

### A.   Motion to Dismiss

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a court must accept all allegations in the complaint as true and view them in the light most favorable to the plaintiff.  See Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims[.]'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1953 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions[.]'") (citation omitted).  The Third Circuit has instructed district courts to conduct a two-part analysis in deciding a motion to dismiss.  Fowler v. UPMC

5

Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

First, a district court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler, 578 F.3d at 210-11 (citing Iqbal, 129 S. Ct. at 1949). Second, a district court must "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 211 (quoting Iqbal, 129 S. Ct. at 1950). "[A] complaint must do more than allege the plaintiff's entitlement to relief." Id. "'[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.''" Id. (quoting Iqbal, 129 S. Ct. at 1949); see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) ("The Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.")(quoting Twombly, 550 U.S. at 556).

A court need not credit "'bald assertions'" or "'legal conclusions'" in a complaint when deciding a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429–30 (3d Cir. 1997).  The defendant has the burden of demonstrating that no claim has been presented.  Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

**B.   Rule 9(b)**

The Third Circuit has held that "plaintiffs must plead FCA claims with particularity in accordance with Rule 9(b)." U.S. ex rel. Wilkins v. United Health Group, Inc., 659 F.3d 295, 301 n.9 (3d Cir. 2011) (citing U.S. ex rel. LaCorte v. SmithKline Beecham Clinical Labs., 149 F.3d 227, 234 (3d Cir. 1998)). Fed. R. Civ. P. 9(b) states, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." See Craftmatic Securities Litigation v. Kraftsow, 890 F.2d 628, 645 (3d Cir. 1989) ("Fed. R. Civ. P. 9(b) requires plaintiffs to plead the circumstances of the alleged fraud with particularity to ensure that defendants are placed on notice of the 'precise

misconduct with which they are charged, and to safeguard
defendants against spurious charges' of fraud.").

The Third Circuit made clear, however, that *at the pleading
stage*, Rule 9(b)'s particularity requirement does not require a
plaintiff to identify a specific claim for payment to state a
claim for relief. Wilkins, 659 F.3d at 308. Rather, the Third
Circuit suggested that a plaintiff should "identify
representative examples of specific false claims that a
defendant made to the Government in order to plead an FCA claim
properly." Id. (remanding the issue to the District Court).
Courts in this District have found that a plaintiff may satisfy
that requirement in one of two ways: (1) "by pleading the date,
place or time of the fraud;" or (2) using an "alternative means
of injecting precision and some measure of substantiation into
their allegations of fraud." U.S. ex rel. Wilkins v. United
Health Group, Inc., No. 08-3425, 2011 WL 6719139, at *2 (D.N.J.
Dec. 20, 2011) (on remand from the Third Circuit) (citing Lum v.
Bank of Am., 361 F.3d 217, 223–24 (3d Cir. 2004)).

In Foglia v. Renal Ventures Management, LLC, 754 F.3d 153,
155–56 (3d Cir. 2014), the Third Circuit explained that the
"Fourth, Sixth, Eighth, and Eleventh Circuits have held that a
plaintiff must show 'representative samples' of the alleged

8

fraudulent conduct, specifying the time, place, and content of the acts and the identity of the actors," while the "First, Fifth, and Ninth Circuits, however, have taken a more nuanced reading of the heightened pleading requirements of Rule 9(b), holding that it is sufficient for a plaintiff to allege particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." Foglia, 754 F.3d at 155-56 (citations and quotations omitted). Considering that "the purpose of Rule 9(b) is to provide defendants with fair notice of the plaintiffs' claims," the Third Circuit adopted "the more 'nuanced' approach followed by the First, Fifth, and Ninth Circuits." Id. at 156-57 (citations and quotations omitted).

Thus, in order to survive a motion to dismiss and satisfy the standards of Rule 9(b), a plaintiff asserting claims under the FCA "must provide particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." Id. at 158-59 (citations omitted). "Describing a mere opportunity for fraud will not suffice," and, instead, a plaintiff must provide "sufficient facts to establish a plausible ground for relief." Id. at 159 (citations omitted).

**IV. DISCUSSION**

As an initial matter, Defendants argue that Relator has added four "entirely new" schemes to the Amended Complaint which did not appear in the original complaint.  Defendants argue that the Court should dismiss these new claims because Relator failed to file the Amended Complaint under seal in accordance with 31 U.S.C. § 3730(b)(2).[2]  Defs.' Reply at 2 [Doc. No. 30].  Relator alleges for the first time in her Amended Complaint that Dr. Bahal failed to provide the required level of supervision for ANSAR testing (Am. Compl. ¶¶ 134-161), provided kickbacks to patients in violation of the Anti-Kickback Statute (Am. Compl. ¶¶ 192-204), conducted medically unnecessary lower extremity studies (Am. Compl. ¶¶ 171-191), and waived patients' copay amounts (Am. Compl. ¶¶ 236-248).  Relator, in turn, argues that Defendants waived this potential procedural deficiency by permitting Relator to file an Amended Complaint.

The question of whether an amended complaint must be filed under seal in a <u>qui tam</u> FCA action has not been decided by our

---

[2] This section provides, in relevant part, "[t]he complaint shall be filed *in camera*, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders."  31 U.S.C. § 3730(b)(2).

Circuit Court.[3]  Some courts require the filing and service requirements for an original FCA complaint be duplicated when the amended complaint adds new claims or different allegations of fraud.  See, e.g., U.S. ex rel. Davis v. Prince, 766 F. Supp. 2d 679, 684 (E.D. Va. 2011); U.S. ex rel. Wilson v. Bristol-Myers Squibb, Inc., 750 F.3d 111, 115 (1st Cir. 2014).  Other courts find that the procedural requirements only apply to the filing of original complaints.  See, e.g., U.S. ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc., 972 F. Supp. 2d 1317, 1326 (N.D. Ga. 2013).

Preliminarily, the Court rejects Relator's argument that any procedural defects in the Amended Complaint were waived by Defendants' consent to the filing of the Amended Complaint. Relator filed an Amended Complaint, as of right, pursuant to Fed. R. Civ. P. 15(a)(1) without prejudice to Defendants' right to assert all applicable defenses.  However, the Court does not find any procedural defects exist.  The Court's February 13,

---

[3] Defendants cite U.S. ex rel. Mailly v. Healthsouth Holdings, Inc., No. 07-2981, 2010 WL 149830 (D.N.J. Jan. 15, 2010) to support their proposition that even amended complaints must be filed under seal in qui tam actions.  In that case, however, not even the original complaint was filed under seal.  The Court dismissed the complaint for failing to follow the FCA's procedural rules, but this ruling was based on the fact that neither complaint was filed under seal.

2015 Order specifically stated that the seal was "lifted as to all matters occurring in this action after the date of this order." Feb. 13, 2015 Order ¶ 3 [Doc. No. 12]. Because the Court's Order states that all materials filed after February 13, 2015 are not to be sealed, and the Amended Complaint was filed after that date on April 27, 2015, the Court need not decide which line of cases to apply. The Court will not dismiss Relator's new claims on these grounds.

Substantively, Defendants argue that one of Relator's claims fails to state a claim and the remainder do not survive the heightened pleading requirement of Rule 9(b). The Court considers both of Defendants' arguments in turn.

## A. Failure to State a Claim: Changed Dates of Service

Relator alleges that Defendants scheduled procedures for patients on separate dates or fraudulently altered documents to make it appear that procedures were performed on different dates in order to increase Medicare reimbursements. Am. Compl. ¶¶ 205-35. Defendants argue this claim fails as a matter of law because this conduct did not cause any loss to the Government because whether the procedures were billed together or separately did not result in a greater reimbursement. See U.S. ex rel. Sanders v. Am.-Amicable Life Ins. Co. of Texas, 545 F.3d

256, 259 (3d Cir. 2008) (the FCA only covers instances of fraud that might result in financial loss to the Government).

Defendants point out that in Relator's original complaint, the basis for Relator's "bundling" claim was the Centers for Medicare & Medicaid Services (CMS)[4] Multiple Procedure Payment Reduction Policy ("MPPR").  The MPPR Policy provides that CMS will make full payment on the technical component of the highest paid procedure on a single day, but other procedures performed that same day on the same patient will be reimbursed at a lower rate.  Relator alleged in her original complaint that in order to circumvent the MPPR policy, Dr. Bahal instructed his staff to schedule tests for different days so that they could be billed separately, or falsify the dates on the records after the fact. Orig. Compl. ¶¶ 34-73.  Defendants previously explained, however, that the MPPR Policy did not apply to diagnostic cardiovascular procedures until January 1, 2012 and Relator filed her original complaint on April 13, 2012.  The Amended Complaint does not reference the MPPR policy and Relator provides no alternative factual or legal basis for her claim that Defendants conduct of bundling procedures, if true, caused

---

[4] CMS is a federal agency within the United States Department of Health and Human Services (HHS) that administers the Medicare program.

a loss to the Government.  Accordingly, this claim will be dismissed without prejudice.

## B. Plausibility under the Heightened Pleading Requirements of Rule 9(b)

Defendants additionally argue that Relator's remaining seven alleged fraudulent schemes are insufficiently pled.  The Court will analyze these seven schemes individually.

### 1. Medically Necessary Testing

First, Relator alleges "upon information and belief" that Defendants "systemically and routinely submitted false claims [and] certified that there was a medical necessity" when such treatments were not medically necessary.  Am. Compl. ¶ 50. Defendants argue that Relator has no medical expertise to make these allegations and is not qualified to determine medical necessity.  For example, Realtor states that Dr. Bahal ordered multiple cardiology tests, but provides no basis as to why such tests were medically unnecessary.  Further, Relator claims that after Dr. Bahal met with patients their charts would include additional patient reported symptoms which justified additional testing.  However, Defendants argue that a physician is expected to obtain more complete symptom information from a patient and respond accordingly.  Defendants further attack Relator's single example of a patient who Dr. Bahal allegedly subjected to

14

catheterization solely because Medicare would reimburse the procedure.  Defendants argue that Relator has provided no support for the allegation that the catheterization was not otherwise medically necessary.

The Court finds that this first scheme does not pass either the Rule 8 or 9(b) pleading standards.  Because Relator provides no basis as to why these tests were medically unnecessary based on patient reported symptoms, these allegations are "not only compatible with, but more likely explained by," lawful behavior and therefore cannot "plausibly suggest" actionable wrongdoing. Iqbal, 129 S. Ct. at 1950.  Further, pursuant to Rule 9(b), Relator has only provided "a mere opportunity for fraud" and has failed to plead sufficient facts to establish a plausible ground for relief."  Foglia, 754 F.3d at 158 (citations omitted). Accordingly, this claim will be dismissed without prejudice.

### 2. Dr. Bahal Failed to Read Cardiology Studies

Next, Relator alleges that Defendants submitted false claims for reimbursements for various cardiology studies performed by staff members but not reviewed by Dr. Bahal. Relator alleges that it would have been "virtually impossible" for Dr. Bahal to have reviewed the studies without Relator's knowledge because she was the first to arrive and last to leave

15

the medical office each day.  Am. Compl ¶ 101.

Relator alleges that Defendants submitted factually false claims because the reports did not contain Dr. Bahal's interpretation, the Government paid for Dr. Bahal's professional interpretation which it did not receive, and Dr. Bahal never submitted a report with his interpretation.  In the Amended Complaint, Relator admits that reports were generated and signed by Dr. Bahal, but claims they were reviewed in haste in "bunches."  Am. Compl. ¶ 80.  Relator further alleges Defendants submitted a legally false claim for diagnostic tests because Dr. Bahal did not (1) review or interpret the diagnostic tests and (2) did not review or author the reports in violation of 42 C.F.R. § 415.102(a)(1)-(3).[5]

"There are two categories of false claims under the FCA: a factually false claim and a legally false claim." U.S. ex rel. Wilkins v. United Health Grp., Inc., 659 F.3d 295, 305 (3d Cir. 2011).  "A claim is factually false when the claimant

_____

[5] 42 C.F.R. § 415.102(a)(1)-(3) provides: "(a) General rule. If the physician furnishes services to beneficiaries in providers, the carrier pays on a fee schedule basis provided the following requirements are met: (1) The services are personally furnished for an individual beneficiary by a physician. (2) The services contribute directly to the diagnosis or treatment of an individual beneficiary. (3) The services ordinarily require performance by a physician."

16

misrepresents what goods or services that it provided to the Government and a claim is legally false when the claimant knowingly falsely certifies that it has complied with a statute or regulation the compliance with which is a condition for Government payment." Id. (citation omitted).

Legally false claims are based on a false certification theory of liability and may be express or implied. Rodriguez v. Our Lady of Lourdes Med. Ctr., 552 F.3d 297, 303 (3d Cir. 2008), overruled in part on other grounds by United States ex rel. Eisenstein v. City of New York, 556 U.S. 928 (2009). "Under the 'express false certification' theory, an entity is liable if it falsely certifies that it is in compliance with regulations which are prerequisites to Government payment in connection with the claim for payment of federal funds." U.S. ex rel. Wilkins v. United Health Grp., Inc., 659 F.3d 295, 305 (3d Cir. 2011) (citing Rodriguez, 552 F.3d at 303).

The implied false certification theory, in contrast, is premised "on the notion that the act of submitting a claim for reimbursement itself implies compliance with governing federal rules that are a precondition to payment." Id. at 305 (citation omitted). "[U]nder this theory a plaintiff must show that if the Government had been aware of the defendant's violations of

17

the Medicare laws and regulations that are the bases of a plaintiff's FCA claims, it would not have paid the defendant's claims." Id. at 307.

Relator's factually false certification theory claim may proceed. "In a run-of-the-mill 'factually false' case, proving falsehood is relatively straightforward: A relator must generally show that the Government payee has submitted 'an incorrect description of goods or services provided or a request for reimbursement for goods or services never provided.'" U.S. ex rel. Conner v. Salina Reg'l Health Ctr., Inc., 543 F.3d 1211, 1217 (10th Cir. 2008) (citation omitted).  As an example, Relator alleges Dr. Bahal's Medicare submissions for ultrasounds were factually false because the reports did not contain Dr. Bahal's interpretation as required by statute.  This constitutes an incorrect description of goods and services alleged never to have been provided and sufficiently states a claim for relief. Relator further provides representative examples of specific false claims.  See, e.g., Am. Compl. ¶¶ 93-94.  Because the Court has found this case may proceed on the basis of factual falsehood, it need not analyze the same claim under an alternative theory.  Wilkins, 659 F.3d at 313.

### 3.  ANSAR (Autonomic Nervous System And Respiration) Tests

18

Relator alleges that Defendants submitted false claims in connection with ANSAR tests because they were administered in violation of Medicare's supervision requirements.  Am. Compl. ¶¶ 134-35.  Specifically, Relator alleges that ANSAR tests either required direct or personal supervision and were regularly performed when Dr. Bahal was not present in violation of 42 C.F.R. § 410.32(b) ("all diagnostic x-ray and other diagnostic tests covered under section 1861(s)(3) of the Act and payable under the physician fee schedule must be furnished under the appropriate level of supervision by a physician as defined in section 1861(r) of the Act.  Services furnished without the required level of supervision are not reasonable and necessary").  Relator asserts that she personally performed ANSAR tests outside of Dr. Bahal's presence.  Thus, Realtor alleges that due to the lack of supervision, the ANSAR tests submitted to Medicare constituted false claims.  Relator has provided particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.  Foglia, 754 F.3d at 158-59.

Defendants argue that Relator has not specified whether or not ANSAR tests were billed globally, in which case the

19

physician supervision concept may not have applied.  However, Relator alleges that ANSAR testes were billed under two codes, both of which required Dr. Bahal's presence.  Am. Compl. ¶¶ 142-143.  The Court need not decide a dispute of fact at this point. Viewing the facts in the light most favorable to Relator, Relator has sufficiently pled a FCA claim with regard to this scheme.

### 4.  Holter Monitoring

Relator alleges that Defendants submitted false claims for the professional components of holter monitoring services including: (1) submitting claims for the review and interpretation of holter monitor data that was not performed and (2) submitting claims for Dr. Bahal's review and interpretation of holter monitor data performed by another staff member in violation of 42 C.F.R. § 415.102(a)(1).  Specifically, Relator alleges that bills were submitted before the patient returned the holter monitor (Am. Comp. ¶ 165), claims would reflect that Dr. Bahal interpreted data where the data had only been reviewed and interpreted by an unqualified staff member (Am. Compl. ¶¶ 168-169), and claims would be submitted for holter monitor data that had not been reviewed by anyone (Am. Compl. ¶¶ 166-167). The Amended Complaint lists forty patients for whom Dr. Bahal

20

failed to review and interpret their holter monitor data.  Am.
Compl. ¶ 167.  As such, Plaintiff has pled this claim with
sufficient particularity to satisfy <u>Foglia</u>.

### 5. Kickbacks for Unnecessary Testing

Relator alleges that Dr. Bahal provided patients with
prescription narcotics in exchange for allowing him to perform
and bill Medicare for unnecessary tests.  Am. Compl. ¶¶ 192-204.
Specifically, Relator alleges that Dr. Bahal gave A.F.
prescriptions for narcotics after every visit which were not
medically necessary as an inducement to permit Dr. Bahal to bill
Medicare for unnecessary tests.

The Anti-Kickback Statute (AKS), in relevant part, provides
that

> (2) whoever knowingly and willfully offers or pays
> any remuneration (including any kickback, bribe or
> rebate) directly or indirectly, overtly or
> covertly, in cash or in kind to any person to induce
> such person—
>
> > (A) to refer an individual to a person for the
> > furnishing or arranging for the furnishing of
> > any time or service for which payment may be
> > made in whole or in part under a Federal health
> > care program, or
> >
> > (B) to purchase, lease, order, or arrange for
> > or recommend purchasing, leasing, or ordering
> > any good, facility, service, or item for which
> > payment may be made in whole or in part under
> > a Federal health care program,

21

> shall be guilty of a felony upon conviction
> thereof, shall be fined not more than $25,000 or
> imprisoned for not more than five years, or both.

Wilkins, 659 F.3d at 311 (citing 42 U.S.C. § 1320a-7b(b)(2)).

Relator's AKS claim is not sufficiently factually supported. Rather, Relator alleges in a conclusory fashion that the narcotics allegedly prescribed by Dr. Bahal were not medically necessary. Am. Compl. ¶ 195; see U.S. ex rel. Lampkin v. Johnson & Johnson, Inc., No. 08-05362, 2013 WL 2404238, at *5 (D.N.J. May 31, 2013) (dismissing Relator's kick-back claims under Rule 9(b) where complaint provided no factual support that medications were only prescribed in order to receive kickbacks). Relator only specifically claims that one person, A.F., was induced into medically unnecessary testing but does not explain the basis of this conclusion. For example, Relator does not allege the equivalent of a patient who comes in for a broken foot and receives an arm x-ray. Rather, Relator claims to know that A.F.'s tests were medically unnecessary, but provides no factual support for this claim. This claims does not pass the heightened pleading requirement of 9(b) and therefore will be dismissed without prejudice.

### 6. Arterial and Lower Extremity Scans

Relator alleges that Defendants regularly submitted claims

22

for noninvasive physiologic studies of the lower extremities that were not medically necessary.  Am. Compl. ¶¶ 171-91. Specifically, Relator alleges that Dr. Bahal performed an arterial scan and a lower extremity scan on patients during the same visit, which was unusual and not medically necessary.  Am. Compl. ¶¶ 172-73.  Relator claims that a duplex scan is only warranted when the arterial scan is abnormal, that is, if there is a 50 percent stenosis or significant symptoms present.  Am. Compl. ¶ 173 (citing Local Coverage Determination: Non-Invasive Cerebrovascular Arterial Studies (L27504) ("Physiologic studies and a duplex scan performed on the same day will be considered medically necessary if there is a 50 percent stenosis demonstrated on the duplex scan, or there are significant symptoms present.")).  Relator alleges that Dr. Bahal regularly ordered duplex scans regardless of the results of the first study.  Am. Compl. ¶ 177.  Relator names eleven patients who had both tests performed on the same day.

There are two main deficiencies in Relator's allegations. First, Relator does not allege that these patients did not have a 50 percent stenosis and did not have significant symptoms present.  Second, Relator provides no factual support for her claim that these tests were not medically necessary.

23

Accordingly, this claim will be dismissed without prejudice as it does not satisfy <u>Foglia</u>.

### 7. Waiver of Co-Payments

Relator alleges that Defendants regularly waived copayments which violates the FCA because: (1) Defendants misstated the reasonable charge of the services provided; (2) Defendants' waiver of copayments violates the AKS; and (3) Defendants' waiver of copayments resulted in Defendants performing and billing for procedures and services that were not reasonable or necessary. Am. Compl. ¶ 236. Relator also claims the waiver of copayments constitutes an AKS violation. Am. Compl. ¶ 245.

Generally, Medicare covers 80 percent of the reasonable cost of medical services. 42 U.S.C. § 1395l(a)(1). Accordingly, the patient is normally required to contribute the remaining 20 percent as a copayment. The Medicare Claims Processing Manual provides:

> Physicians or suppliers who routinely waive the collection of deductible or coinsurance from a beneficiary constitute a violation of the law pertaining to false claims and kickbacks.... Deductible and coinsurance amounts are taken into account (included) in determining the reasonable charge for a service or item. In this regard, a billed amount that is not reasonably related to an expectation of payment is not considered the "actual" charge for the purpose of processing a claim or for the purpose of determining customary charges.

24

Medicare Claims Processing Manual, Ch. 23, § 80.8.1, available

at www.cms.hhs.gov/manuals/downloads/clm104c23.pdf.  As

explained by another court,

> The "false claim" occurs, according to the
> Department of Health and Human Services Office of
> Inspector General ("OIG"), because a "provider,
> practitioner, or supplier who routinely waives
> Medicare copayments or deductibles is misstating
> its actual charge." Department of Health and Human
> Services, Publication of OIG Special Fraud Alerts,
> 59 F.R.65372, 65374–65375 (Dec. 19, 1994). In
> turn, the Medicare program pays more than it
> should for a particular visit. See id. at 65375
> (providing the following example of a false claim:
> "If a supplier claims that its charge for a
> service is $100, but routinely waives the co-
> payment, the actual charge is $80. Medicare should
> be paying 80% of $80 (or $64), rather than 80% of
> $100 (or $80). As a result of the supplier's
> misrepresentation, the Medicare program is paying
> $16 more than it should for the service."). The
> OIG explained that one exception to "prohibition
> against waiving copayments and deductibles is that
> providers ... may forgive the copayment in
> consideration of a particular patient's financial
> hardship." Id. However, this exception "should be
> used occasionally to address the special financial
> needs of a particular patient," and "[e]xcept in
> such special cases, a good faith effort to collect
> deductibles and copayments must be made." Id.

U.S. ex rel. Sharp v. E. Oklahoma Orthopedic Ctr., No. 05-572,

2009 WL 499375, at *23 (N.D. Okla. Feb. 27, 2009).  Relator has

sufficiently alleged the factual scenario described above.

Relator alleges Dr. Bahal routinely waived copayments which

25

resulted in Medicare paying more than it should have for patient visits.  Relator further alleges that the waiving of copayments was intended to induce patients to allow Dr. Bahal to perform medically unnecessary tests and procedures.  Am. Compl. ¶¶ 246, 248.  Accordingly, Relator has stated a claim under the FCA for waiver of copayments.

Likewise, Relator has stated a claim under the AKS.  The AKS prohibits offering or paying any remuneration "to any person to induce such person to purchase ... any good ... for which payment may be made in whole or in part under a Federal health care program."  42 U.S.C. § 1320a-7b(b)(2)(B).  Relator alleges that Dr. Bahal waived copayments as an inducement to generate business payable to Medicare.  Accordingly, this claim is also sufficiently pled.

### C. State Claims

Defendants also argue that claims made under the New Jersey Statutes (Counts III and IV) are deficient for the same reasons as the claims made under the FCA.  Defs.' Br. at 4 n.4.  Count III asserts a violation of the New Jersey False Claims Act, N.J.S.A. § 2A:32C-3(a) and Count IV alleges a violation of the New Jersey False Claims Act pursuant to N.J.S.A. § 2A:32C-3(b). Relator does not specify which alleged schemes she seek relief

26

under pursuant to the provisions of the New Jersey False Claims Act.  Accordingly, to the extent the Court has found Relator has failed to plead her FCA claims, those state claims are also dismissed without prejudice.

V.   **CONCLUSION**

Defendants' motion to dismiss will be granted in part and denied in part.  Relator's claim that Defendants changed dates of service to increase Medicare reimbursements will be dismissed without prejudice because it fails to state a claim.  Three of Relator's alleged schemes will be dismissed without prejudice on the grounds that they are insufficiently pled: (1) Defendants systemically and routinely submitted false claims for medically unnecessary tests; (2) Defendants provided kickbacks for unnecessary testing; and (3) Defendants provided duplicative arterial and lower extremity scans.  The remaining four alleged schemes are sufficiently pled and will not be dismissed.  To the extent the Court has found Relator has failed to sufficiently plead her FCA claims, those state claims are also dismissed without prejudice.  An Order consistent with this Opinion will be entered.

s/ Noel L. Hillman
NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey
Dated:   December 22, 2015

27